**NOT FOR PUBLICATION**

```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF NEW JERSEY


RICHARD A. BANKS,              :
                               :  Civil Action No. 06-4152 (FLW)
          Plaintiff,           :
                               :
     v.                        :  OPINION
                               :
WILLIAM J. FRAISER, et al.,    :
                               :
          Defendants.          :
```

**APPEARANCES:**

    RICHARD A. BANKS, Plaintiff <u>pro se</u>
    Prison # 53550
    Federal Detention Center
    P.O. Box 562
    Philadelphia, Pennsylvania 19105

**WOLFSON**, District Judge

    Plaintiff Richard A. Banks, currently confined at the Federal Detention Center in Philadelphia, Pennsylvania, seeks to bring this action <u>in forma pauperis</u> pursuant to 42 U.S.C. § 1983,[1] alleging violations of his constitutional rights. Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. § 1915(g), the Court will grant plaintiff's application to proceed <u>in forma pauperis</u> pursuant to

---

[1] Plaintiff initially characterized his action as a petition for habeas relief under 28 U.S.C. § 2241. By Order dated September 8, 2006, this Court re-characterized the action as a civil rights complaint under 42 U.S.C. § 1983 because plaintiff was seeking to remedy the conditions of his confinement, and was not challenging the length or duration of any imposed federal sentence.

28 U.S.C. § 1915(a) (1998) and order the Clerk of the Court to file the Complaint.

At this time, the Court must review the Complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.  For the reasons set forth below, the Court concludes that the Complaint should proceed in part at this time.

## I.   BACKGROUND

Plaintiff brings his civil rights action against defendants, William J. Fraiser, Warden at Monmouth County Correctional Institution ("MCCI"); Joseph W. Oxley, Sheriff; Monmouth County Board of Chosen Freeholders; and the United States Marshal's Service in Trenton, New Jersey.  (Complaint, Caption).  It appears that plaintiff was a federal detainee at the time he was confined at MCCI.  The Complaint asserts that the conditions of plaintiff's confinement at MCCI violate his constitutional rights.

Plaintiff was confined at MCCI from August 12, 2006 to about November 3, 2006.  During this time, plaintiff alleges that he was denied a religious diet; that he was denied a request for unmonitored legal calls; that his access to the law library was limited to one hour per week; that he was housed with convicted

inmates and state detainees; and that he was denied changes of underwear, socks, T-shirts, and sheets.  Plaintiff attaches copies of the grievances he filed while confined at MCCI, and complains that defendants did not remedy the alleged unconstitutional conditions of his confinement.

In his amended pleading, plaintiff seeks $5 million in compensatory and punitive damages.  He also seeks injunctive relief to remove plaintiff and other federal detainees from MCCI.  Because plaintiff is no longer confined at MCCI,[2] his request for injunctive relief will be dismissed as moot.

## II.   STANDARDS FOR A SUA SPONTE DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity.  The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B) and 1915A.

---

[2]  Plaintiff notified the Court, by letter dated November 3, 2006, that his new address is the Federal Detention Center in Philadelphia, Pennsylvania, where he was transferred sometime on or before November 3, 2006.

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992). The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions." Id.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)). The standard for evaluating whether a complaint is "frivolous" is an objective one. Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981). However, where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. Denton

v. Hernandez, 504 U.S. 25, 34 (1992); Alston v. Parker, 363 F.3d 229 (3d Cir. 2004)(complaint that satisfied notice pleading requirement that it contain short, plain statement of the claim but lacked sufficient detail to function as a guide to discovery was not required to be dismissed for failure to state a claim; district court should permit a curative amendment before dismissing a complaint, unless an amendment would be futile or inequitable); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

### III.   SECTION 1983 ACTIONS

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his civil rights guaranteed under the United States Constitution. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the

Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.[3] West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

## IV.  ANALYSIS

### A.  Denial of Religious Diet

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof..." U.S. Const. amend. I.  Inmates retain the protections of the First Amendment, see Turner v. Safley, 482 U.S. 78 (1987); O'Lone v. Estate of Shabazz, 482 U.S. 342 (1987), and they must be provided reasonable opportunities to exercise their First Amendment right to religious freedom, Cruz v. Beto, 405 U.S. 319 (1972).

The United States Court of Appeals for the Third Circuit has held that, where an inmate's request for a special diet was a sincerely-held religious belief, the inmate has established a

---

[3] Plaintiff names the U.S. Marshal's Service as a defendant in this action.  However, the U.S. Marshal's Service is not a state actor subject to liability under § 1983, although defendant might be subject to liability under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).  Here, the Complaint fails to allege any facts against the U.S. Marshal's Service to support the asserted claims of constitutional violations.  Therefore, the Complaint will be dismissed without prejudice as to this defendant for failure to state a claim at this time.

constitutionally protected interest, under the First Amendment, upon which the prison administration could not unreasonably infringe, absent a legitimate penological interest to the contrary.  <u>DeHart v. Horn</u>, 227 F.3d 47, 52-57 (3d Cir. 2000).  To establish that the denial of a religious diet violates the Free Exercise Clause, plaintiffs must show that it contravenes his sincere religious belief and is not reasonably related to a legitimate penological interest.  "[T]he beliefs avowed [must be] (1) sincerely held, and (2) religious in nature, in the claimant's scheme of things."  <u>Africa v. Pennsylvania</u>, 662 F.2d 1025, 1030 (3d Cir. 1981), <u>cert</u>. <u>denied</u>, 456 U.S. 908 (1982).  "The mere assertion of a religious belief does not automatically trigger First Amendment protections, . . . [and] only those beliefs which are both sincerely held and religious in nature are entitled to constitutional protection."  <u>DeHart v. Horn</u>, 227 F.3d at 51.

Here, plaintiff generally alleges that he was denied a religious "no meat" meal and attaches grievance forms he had filed with the officials at MCCI.  Plaintiff was informed that special diets are based on medical needs only, and that if his religion required a vegetarian diet, he should write to the MCCI chaplain for a special religious diet.  However, plaintiff never identified his faith for purposes of obtaining a religious diet.  He simply states that he requires a vegetarian diet.  MCCI

7

officials told plaintiff that vegetables are served with every meal so his dietary needs would be satisfied if he ate them.

Based on these allegations, the Court finds that plaintiff has not asserted facts sufficient to state a cognizable claim regarding denial of a religious diet.  Vegetables were provided with every meal, thus there is no indication that the food provided plaintiff was so inadequate as to deny him proper nutrition or conflict with his religious requirements, which plaintiff never articulated.  See Williams v. Morton, 343 F.3d 212 (3d Cir. 2003) (nutritionally-adequate vegetarian diet is sufficient to comply with Free Exercise rights; institution need not provide pork-free meat diet).  Therefore, this claim will be dismissed for failure to state a cognizable claim.[4]

B.  Denial of Unmonitored Legal Calls

Inmates also have a right protected under the First Amendment to communicate with their family and friends by reasonable access to the telephone.[5]  Owens-El v. Robinson, 442

---

[4] The Court further finds that it would be futile to allow plaintiff to amend his Complaint in this instance.  Plaintiff never identified his religious affiliation or the tenet of his faith proscribing a non-vegetarian diet, either in this Complaint or in any of the grievances he filed at MCCI.  Plaintiff is required to show a sincerely held religious belief to support a First Amendment claim.  Moreover, vegetarian selections were provided to him at every meal so there is no indication that plaintiff was denied adequate nutrition in violation of his First Amendment rights.

[5] Inmates' ability to communicate with their lawyers is further protected by their constitutional right of access to the

F. Supp. 1368, 1386 (W.D. Pa. 1978).  However, it is established that a prisoner "has no right to unlimited telephone use."  Washington v. Reno, 35 F.3d 1093, 1100 (6th Cir. 1994) (quoting Benzel v. Grammar, 869 F.2d 1105, 1108 (8th Cir.), cert. denied, 493 U.S. 895 (1989)).  An inmate's telephone access is "subject to rational limitations in the face of legitimate security interests of the penal institution."  Id. (quoting Strandberg v. City of Helena, 791 F.2d 744, 747 (9th Cir. 1986)).

   Thus, inmates' rights to communicate, even with legal counsel, are not unlimited.  Aswegan v. Henry, supra.  Prison officials can limit communications, particularly telephone communications, to ensure, safety, security, and the orderly operation of their institution.  Griffin-El v. MCI Telecommunications Corp., 835 F. Supp. 1114, 1122-23 (E.D. Mo. 1993), aff'd, 43 F.3d 1476 (8th Cir. 1994).  Numerous and sometimes stringent restrictions on personal telephone calls by inmates have been upheld as constitutional.  Most of these restrictions involve limits on the numbers of calls permitted per week, limits on persons who can be called, and time limits on

---

courts and may implicate the Sixth-Amendment right to assistance of counsel in criminal proceedings.  See Aswegan v. Henry, 981 F.2d 313 (8th Cir. 1992)(analyzing telephone use as access-to-courts issue); Owens-El v. Robinson, supra (applying Sixth-Amendment standards to telephone use restrictions).

individual calls.[6]  For example, close custody inmates may be limited to a list of three recipients of personal calls.  Benzel v. Grammar, 869 F.2d 1105 (8th Cir.), cert. denied, 493 U.S. 895 (1989).

To the extent an inmate asserts that the restriction on telephone use has violated his First Amendment rights, he also must allege that he has suffered any "actual injury" from the telephone restriction.  See, e.g., Peterkin v. Jeffes, 855 F.2d 1021, 1041 (3d Cir. 1989)(finding that in order to assert a viable claim of telephone deprivation, an inmate must make some showing of prejudice or actual injury); Lewis v. Casey, 518 U.S. 343 (1996)(stating that a prisoner alleging a violation of his right of access must show that prison officials caused him past or imminent "actual injury" by hindering his efforts to pursue such a claim).

Here, plaintiff alleges that he was denied unmonitored legal calls.  He does not articulate, however, whether these "legal"

---

[6]  Recently, the Supreme Court has held that the telephone restriction of one social call per week is rationally related to security and rehabilitation, and not an exaggerated or unreasonable response to a prisoner's criminal activity prior to incarceration.  See Beard v. Banks, 126 S. Ct. 2572 (2006) (holding that ban on all newspapers, magazines, and personal photographs for inmates housed in long term segregation unit does not violate First Amendment because it is rationally related to rehabilitation); Overton v. Bazzetta, 539 U.S. 126 (2003) (holding that ban on visitation for inmates who commit multiple substance-abuse violations is rationally related to security and rehabilitation).

10

calls were to his counsel or were to court personnel regarding the status of his court proceedings.  MCCI officials responded to plaintiff's grievance by informing plaintiff that he is allowed to make all the collect phone calls he needs to during his "time out".  However, this response does not indicate whether any such calls, especially to counsel, would have to be monitored.  Plaintiff is plainly entitled to confidential communication with his legal counsel; thus, if plaintiff's allegations are true, he *may* be able to support a claim under these circumstances sufficient to show a constitutional deprivation.  Therefore, giving plaintiff the benefit of all favorable inferences, as required at this initial stage, the Court is constrained to allow this claim to proceed at this time.

C.  Access to Court/Law Library Claim

Next, plaintiff alleges that he has been denied access to the courts because his use of the jail law library is restricted to one hour per week.

The constitutional right of access to the courts is an aspect of the First Amendment right to petition the government for redress of grievances.  Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 741 (1983).  In addition, the constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for

11

violations of their constitutional rights.  Procunier v. Martinez, 416 U.S. 396, 419 (1974), overruled on other grounds, Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989).  See also Peterkin v. Jeffes, 855 F.2d 1021, 1036 n.18 (3d Cir. 1988) (chronicling various constitutional sources of the right of access to the courts).

In Bounds v. Smith, 430 U.S. 817, 828 (1977), the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."  The right of access to the courts is not, however, unlimited.  "The tools [that Bounds] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration."  Lewis v. Casey, 518 U.S. 343, 355 (1996) (emphasis in original).  Similarly, a pretrial detainee has a right of access to the courts with respect to legal assistance and participation in one's own defense against pending criminal charges.  See, e.g., May v. Sheahan, 226 F.3d 876, 883-84 (7th Cir. 2000); Caldwell v. Hall, 2000 WL 343229 (E.D. Pa.

March 31, 2000).  But see United States v. Byrd, 208 F.3d 592, 593 (7th Cir. 2000) (pretrial detainee who rejects an offer of court-appointed counsel in satisfaction of the Sixth Amendment right to counsel has no alternative right to access to a law library); Wilson v. Blankenship, 163 F.3d 1284, 1290-91 (11th Cir. 1998) (same); United States v. Walker, 129 F.3d 1266, 1997 WL 720385, **4 (6th Cir. 1997) (same).

Moreover, a prisoner alleging a violation of his right of access must show that prison officials caused him past or imminent "actual injury" by hindering his efforts to pursue such a claim or defense.  See Lewis, 518 U.S. at 348-51, 354-55 (1996); Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997). "He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known.  Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable to file even a complaint."  Lewis, 518 U.S. at 351.

Here, plaintiff fails to allege any actual injury as a result of the alleged restriction of law library time to one hour per week.  Plaintiff was able to file this Complaint in a timely manner, and he does not allege that the library time limitation

hindered his efforts to pursue a claim or defense in his other legal matters.  Therefore, plaintiff does not show actual injury with respect to the general claim that he was denied access to the courts by inadequate law library time.  This claim will be dismissed without prejudice accordingly.

D.   Conditions of Confinement

Plaintiff finally asserts a general unconstitutional conditions of confinement claim, alleging that he was denied changes of underwear, socks, T-shirts and sheets; that he had to sleep on a mattress on the floor; and that he was housed with state detainees and convicted state prisoners.  Essentially, plaintiff appears to allege that he was deprived of his liberty interest without due process of law.

A liberty interest protected by the Due Process Clause may arise from either of two sources:  the Due Process Clause itself or state law.  See Asquith v. Department of Corrections, 186 F.3d 407, 409 (3d Cir. 1999).  Pretrial detainees retain liberty interests firmly grounded in the Due Process Clause of the Fourteenth Amendment.  See Fuentes v. Wagner, 206 F.3d 335, 341 n.9 (3d Cir.), cert. denied, 531 U.S. 821 (2000).  Analysis of whether such a detainee has been deprived of liberty without due process is governed by the standards set out by the Supreme Court in Bell v. Wolfish, 441 U.S. 520 (1979).  Fuentes, 206 F.3d at 341-42.

>In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee.  For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law. ...
>
>Not every disability imposed during pretrial detention amounts to "punishment" in the constitutional sense, however.  Once the government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention. ...
>
>A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose.  Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]."  Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment."  Conversely, if a restriction or condition is not reasonably related to a legitimate goal--if it is arbitrary or purposeless--a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees <u>qua</u> detainees.  ...

441 U.S. at 535-39 (citations omitted).  The Court further explained that the government has legitimate interests that stem from its need to maintain security and order at the detention facility.  "Restraints that are reasonably related to the institution's interest in maintaining jail security do not,

15

without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial." 441 U.S. at 540. Retribution and deterrence, however, are not legitimate nonpunitive governmental objectives. 441 U.S. at 539 n.20. Nor are grossly exaggerated responses to genuine security considerations. Id. at 539 n.20, 561-62.

In Bell, the Supreme Court held that double-bunking under the circumstances presented in that case did not constitute punishment, and therefore, did not violate the pretrial detainees' due process rights. Id., at 541-43. The Court further noted that no due process violation occurred where pretrial detainees were detained for generally less than 60 days. However, the Court cautioned that: "confining a given number of people in a given amount of space in such a manner as to cause them to endure genuine privation and hardship over an extended period of time might raise serious questions under the Due Process Clause as to whether those conditions amounted to punishment." Id. at 542.

Such circumstances of serious overcrowding in a county jail were presented in Union County Jail Inmates v. DiBuono, 713 F.2d 984 (3d Cir. 1983). There, the Third Circuit established a two-part test in line with Bell:

> "we must ask, first, whether any legitimate purposes are served by these conditions, and second, whether these

16

>   conditions are rationally related to these purposes.  In
>   assessing whether the conditions are reasonably related to
>   the assigned purposes, we must further inquire as to whether
>   these conditions "cause [inmates] to endure [such] genuine
>   privations and hardship over an extended period of time,
>   that the adverse conditions become excessive in relation to
>   the purpose assigned to them."

713 F.2d at 992.

Here, plaintiff's allegations of being detained with convicted prisoners, and having to sleep on the floor, with no additional changes of underwear, socks, T-shirts and sheets, assert a combination of deprivations for a prolonged period of time of more than 60 days, which may rise to the level of constitutional magnitude.  If these allegations are true, as the Court must accept at this preliminary stage, then it would appear that the conditions allegedly allowed to occur at MCCI by the named defendants were intended to either punish plaintiff, or such conditions were an exaggerated response unnecessary to genuine security and administration considerations at the jail. Plaintiff was housed at MCCI for more than 60 days, and the responses to plaintiff's grievances do not indicate, based on plaintiff's complaints, that defendants provided plaintiff with any meaningful remedy.[7]  Thus, this Court is inclined to allow

---

[7] For instance, MCCI official responses stated that plaintiff would be moved once a bed became available, and that laundry and underclothes are cleaned in the housing unit. However, there is no indication that efforts to move plaintiff were undertaken; nor is there an explanation about whether laundry service is provided or inmates must do their own laundry. Further, plaintiff was informed that additional underwear is

plaintiff's conditions of confinement claim to proceed at this time.

## V.   CONCLUSION

Therefore, for the reasons set forth above, the Court will dismiss with prejudice plaintiff's First Amendment denial of religious diet claim, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim.  Plaintiff's access to courts claim asserting limited use of the jail law library will be dismissed without prejudice, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim at this time.  Further, as plaintiff has articulated no claim against the defendant, U.S. Marshals' Service, the Complaint will be dismissed in its entirety as against this defendant.  Finally, plaintiff's claims asserting denial of unmonitored legal calls and unconstitutional conditions of confinement will be allowed to proceed at this time against the remaining defendants.  An appropriate order follows.

  s/Freda L. Wolfson
FREDA L. WOLFSON
United States District Judge

Dated: January 3, 2007

---

provided for indigent inmates, and that plaintiff's status was to be determined by defendants.  Again there is no explanation for the delay in making this determination so that plaintiff could be provided with additional underwear.